IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BILAL MAHMUD<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JUSTIN P. OBERMAN, et al.,<br><br>　　　　　　　Defendants. | 1:06-cv-1720-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Justin P. Oberman's ("Defendant") Motion to Dismiss [23].

## I.　INTRODUCTION

This is a <u>Bivens</u> action filed by Plaintiff Bilal Mahmud ("Plaintiff"), a Muslim, against Defendant Justin P. Oberman, the former Director of the Credentialing Program Office for the Transportation Security Administration

("TSA") and numerous John Doe defendants.[1]  Plaintiff asserts his claims against Defendant solely in his individual capacity.

From December 1984 through August 2004, Plaintiff was employed as a commercial truck driver with Old Dominion Freight Line ("Old Dominion").  He had a commercial driver's license with a Hazardous Material Endorsement ("HME"), an authorization by the federal government to transport hazardous materials.[2]  On July 30, 2004, Defendant, acting through the United States Department of Homeland Security, revoked the HME on Plaintiff's commercial driver's license.  Defendant revoked the HME under the Hazardous Materials

---

[1] "[F]ictitious party practice is not permitted in federal court."  New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); see also Lewis v. City of Montgomery, No. 2:04-CV-858-WKW, 2006 WL 1761673, at *2 (M.D. Ala. June 27, 2006) ("In general, 'fictitious-party pleading is not permitted in federal court.'")  While courts have sometimes made exceptions when the plaintiff may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly, the unspecific description of the John Doe defendants in this case does not fall under this exception.  Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of the Jefferson County Jail" John Doe sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be identified for service).  Defendants John Does I to X are therefore dismissed.

[2] For purposes of a motion to dismiss, the Court takes Plaintiff's allegations as true.  Thus, the Court discusses the facts as they are alleged by Plaintiff in his Complaint.

Threat Assessment Program ("the Program"), which prohibits any individual from possessing a license to transport hazardous materials in commerce unless the Transportation Secretary has first found that the individual does not pose a security risk.  See 49 U.S.C. §§ 5101, 5103(b)(1).  The Program sets forth procedures for revoking an individual's HME as well as for appealing both the initial and final agency decisions.

Plaintiff claims that when Defendant revoked his HME, Defendant knew that Plaintiff had not engaged in any terrorism-related activity and had no reasonable suspicion of such activity.  Plaintiff further alleges that Defendant falsely stated in writing that he had personally reviewed material indicating that Plaintiff was a threat to national security and transportation security, and had engaged in or encouraged terrorism.  Plaintiff alleges the suspension of his endorsement caused him to lose his position as a truck driver with Old Dominion.

On July 24, 2006, Plaintiff filed this action, asserting five claims against numerous defendants, including Oberman, Old Dominion, the United States Department of Homeland Security, the TSA, the Georgia Department of Motor Vehicle Safety, and numerous individuals.  On November 3, 2006, Plaintiff dismissed all the defendants, except Oberman, and filed an Amended Complaint

asserting a single Bivens claim against Oberman. Plaintiff claims Defendant deprived him of his due process rights under the Fifth Amendment by revoking his HME.

On January 29, 2007, Defendant filed this Motion to Dismiss the Amended Complaint. He argues that: 1) Plaintiff cannot establish personal jurisdiction over him; 2) Plaintiff has no right of action for due process violations where administrative and judicial review was available and prompt action was necessary to protect homeland security; and 3) Defendant is entitled to qualified immunity.

## II.   DISCUSSION

### A.   Standard on Motion to Dismiss

The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well-settled. Dismissal of a complaint is appropriate only "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist." Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other*

*grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor. Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir.1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

B.    Private Right of Action through *Bivens*

Defendant argues that Plaintiff has no private right of action because administrative and judicial review of any adverse decisions were available to Plaintiff, and the revocation action was necessary to protect homeland security. Plaintiff argues he is entitled to damages under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, which permits a cause of action against a federal agent who, while acting under the color of federal law, violates the constitutional rights of an individual.  Bivens, 403 U.S. 388, 397 (1970).  Bivens actions are brought directly under the Constitution and are necessarily limited because they are brought without a statute providing a right of action.

The Eleventh Circuit has made clear that a Bivens action for damages is available *only* where: "(1) the plaintiff has no alternative means of obtaining redress and (2) no 'special factors counseling hesitation' are present."  Hardison v. Cohen, 375 F.3d 1262, 1264 (11th Cir. 2004) (citing Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1575-76 (11th Cir. 1990)).  "Those special factors 'include an appropriate judicial deference' toward the will of Congress," and when "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may

occur in the course of its administration," the court will not fashion additional Bivens remedies. Id. (citing Schweiker v. Chilicky, 487 U.S. 412, 423 (1988)). The Supreme Court has "responded cautiously to suggestions that Bivens remedies be extended into new contexts. The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." Chilicky, 487 U.S. at 421.

 A court will not fashion a Bivens remedy even if the statutory remedy does not provide complete relief. For example, in Bush v. Lucas, the Supreme Court prohibited a federal employee from asserting, under the First Amendment, a Bivens action against his former government agency employer. Bush v. Lucas, 462 U.S. 367 (1983). The Court reasoned that, although the existing remedies would not allow complete relief, the statutory remedial scheme was "clearly constitutionally adequate." Id. at 378 n.14. The Bush court noted that Congress is in a better position to decide whether or not the public interest would be served by a damages remedy, and courts should not modify or supplement "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, . . . [with] a new judicial remedy for the constitutional

violation at issue." Id. at 388; see also Chilicky, 487 U.S. at 428-29 (declining to allow plaintiffs, who asserted a Fifth Amendment due process violation because their Social Security disability benefits were wrongfully terminated, to maintain a Bivens action and stating that although they could not be "fully remedied by the belated restoration of back benefits," "Congress is the body charged with making the inevitable compromises" in fashioning remedies for injuries relating to "massive and complex" government programs).

An important consideration in deciding whether a regulatory scheme is sufficiently comprehensive to constitute a "special factor" is whether it provides "meaningful safeguards or remedies" for the plaintiff. Chilicky, 487 U.S. at 425; Spagnola v. Mathis, 859 F.2d 223, 228 (D.C. Cir. 1988) ("[C]ourts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve Bivens remedies.").

The Hazardous Materials Threat Assessment Program enacted by Congress is a comprehensive effort to regulate the safety of, and avoid risks associated with, hazardous material transportation. The Program provides remedial mechanisms for

8

individuals adversely affected by regulatory action under the Act, sets forth reasonable procedures for revoking an individual's HME, and provides an appeal of both the initial and final agency decisions.

Agency regulations state that an individual cannot possess an HME unless he or she meets several criteria. 49 U.S.C. §§ 5101, 5103(b)(1); 49 C.F.R. § 1572.5(b)(1)(i), amended by 69 Fed. Reg. 68,742 (Nov. 24, 2004).[3] An individual cannot possess an HME if the TSA has notified the person that he poses a security threat warranting denial of the endorsement. 49 C.F.R. § 1572.5(b)(1)(i)(D).

Once a determination is made that an individual poses a security threat, the TSA issues an Initial Notification of Threat Assessment ("Initial Notification"). Id. at § 1572.5(g)(2). The Initial Notification informs the individual that the TSA has deemed him a security threat, states the basis for the determination, describes the procedure for correcting the records, and provides information about the appeals process. An individual may appeal an Initial Notification by asserting that he does not pose a security threat, and the affected person must submit a written reply to the TSA or request the materials upon which the Initial Notification was

---

[3] TSA's administrative regulations were amended by 69 Fed. Reg. 68,742 (Nov. 24, 2004), but the Court refers to the 2003 regulations because they were in effect at the time of the incidents alleged in the Complaint.

based.  Id. at § 1572.141(d).  If an individual requests the materials, the TSA provides copies of all releasable, non-classified information on which the Initial Notification was based.

After review is requested, the Associate Administrator/Chief Operating Officer of the TSA reviews the Initial Notification, the supporting materials, the individual's reply, and any other relevant information.  If the TSA cannot conclude the individual poses a security threat, it must withdraw its Initial Notification.  If the TSA again determines that the individual poses a security threat, it issues a Final Notification of Threat Assessment ("Final Notification").  Id. at § 1572.141(e)(1)-(3).

If a Final Notification is issued, the individual may seek judicial review of the final determination in accordance with the Administrative Procedure Act ("APA").  5 U.S.C. §§ 702, 704; 49 U.S.C. § 5127.  The APA gives a reviewing court broad discretion to fashion a remedy, other than money damages, including "hold[ing] unlawful and set[ting] aside agency action, findings, and conclusions found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] (b) contrary to constitutional right, power, privilege or immunity."  5 U.S.C. § 706(2)(A),(B).

The Court concludes that the Program provides a meaningful remedy and review procedure for Plaintiff in this case.  An individual aggrieved by the TSA's revocation of his HME can seek administrative review of the decision and have it restored through the process provided under federal regulations and the review procedures pursuant to the APA.  "[T]he existence of a right to judicial review under the APA is, alone, sufficient to preclude . . . a Bivens action." Miller v. United States Dep't of Agric. Farm Servs. Agency, 143 F.3d 1413, 1416 (11th Cir. 1998).

The mechanisms under the APA would not constitute a complete remedy, but "the Constitution does not require Congress to provide comprehensive relief for violations of . . . constitutional rights." Id.  In determining whether a right of action exists under Bivens, the Court acknowledges the will of Congress in enacting the Program to protect against threats to citizen safety.  The design of the Program evidences that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, that Plaintiff has meaningful means of obtaining redress, and that there are special factors counseling against this Court creating a damages remedy in the context of a program which addresses an important issue of citizen well-

being and safety. The Court concludes that a <u>Bivens</u> remedy was not contemplated, is not warranted, and thus is not available in this case, and Plaintiff's claim must be dismissed.[4]

C. <u>Personal Jurisdiction</u>

Even if a <u>Bivens</u> remedy were available here, the Amended Complaint should be dismissed for lack of personal jurisdiction because Georgia's long-arm statute and the requirements of due process are not satisfied. Where an evidentiary hearing is not held[5] on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case of jurisdiction to survive a motion to dismiss. <u>Francosteel Corp. v. M/V Charm</u>, 19 F.3d 624, 626 (11th Cir. 1994). "The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence." <u>Paul, Hastings, Janofsky & Walker v. City of Tulsa, Okla.</u>, 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002) (citations

---

[4] Although the Court did not consider it in deciding this motion, the efficacy of the remedial mechanisms under the Program is further demonstrated by Plaintiff's successful appeal of the revocation of his HME. In his original complaint, Plaintiff admitted he provided TSA with additional background information, and TSA subsequently reversed its initial threat assessment and notified the Georgia Department of Motor Vehicles that Plaintiff was eligible to hold an HME.

[5] Neither party requested a hearing in this case.

omitted). "Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff." Id.

"In the Eleventh Circuit, a determination of personal jurisdiction requires consideration of both the Georgia long-arm statute and the Due Process Clause of the United States Constitution." Paul, Hastings, 145 F. Supp. 2d at 1253. In Burger King Corp. v. Rudzewicz, the Supreme Court stated that due process dictates that a nonresident defendant may be subject to personal jurisdiction when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

"Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction." Paul, Hastings, 245 F. Supp. 2d at 1253; see also Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 747 (11th Cir. 2002). A nonresident defendant's "contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of general personal jurisdiction." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1274 (stating that "the due process requirements for general personal jurisdiction are more stringent than for

specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state").

In this case, Defendant states that he has never lived in Georgia or owned property in Georgia. From November 2001 to December 2005, Defendant resided in Washington, D.C., and worked for the TSA in Washington, D.C., and Arlington, Virginia. During his four-year employment with the TSA, Defendant traveled to Georgia on business for three or four one-day trips. None of the visits related to Plaintiff's case or the Program. Defendant currently resides in Chicago and owns a consulting company. Defendant states that in April and August 2006, he was in Georgia on business for two two-day trips for his current employment. These minimal contacts, occurring over the span of six years, do not demonstrate continuous and systematic general business contacts between Defendant and Georgia and are clearly insufficient to establish the more stringent general personal jurisdiction over Defendant.

"A nonresident defendant may be subject to specific jurisdiction in a state when: (1) it has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play

and substantial justice." Paul, Hastings, 245 F. Supp. 2d at 1255 (citations omitted). To show minimum contacts, the plaintiff must meet three criteria.

> First, the plaintiff's cause of action must arise out of, or relate to, the nonresident defendant's contacts with the forum state . . . . Second, the contacts must show that the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state . . . . Third, the defendant's contacts must demonstrate that the nonresident could reasonably anticipate being haled into court in the forum.

Id. at 1255.

Defendant simply has no contacts with Georgia sufficient to subject Defendant to specific personal jurisdiction in this Court. Defendant worked for the TSA in Washington, D.C., and Arlington, Virginia, when he revoked the HME on Plaintiff's commercial driver's license. Plaintiff's cause of action simply does not "arise out of, or relate to, [Defendant's] contacts with [Georgia]." Id.[6]

It also is clear that "the mere fact that federal government officials enforce federal laws and policies . . . on a nationwide basis is not sufficient in and of itself to confer personal jurisdiction in a lawsuit which seeks money damages against

---

[6] Based on the analysis above, it is unnecessary for the Court to analyze whether Defendant would be subject to jurisdiction under the Georgia long-arm statute.

those same governmental officials in their individual capacities." Wag-Aero, Inc. v. United States, 837 F. Supp. 1479, 1485 (E.D. Wis. 1993), aff'd 35 F.3d 569 (7th Cir. 1994) (citing Stafford v. Briggs, 444 U.S. 527, 543-45 (1980)).[7]  Plaintiff has not met his burden of establishing that due process is satisfied such that personal jurisdiction exists over Defendant.[8]

---

[7] Even though Defendant signed the notice of revocation and mailed it to Plaintiff who received it in Georgia, "[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1077 (10th Cir. 1995); see also Lockard v. Equifax, Inc., 163 F.3d 1259, 1265-66 (11th Cir. 1998) (finding no personal jurisdiction existed over defendant where defendant's sole action was mailing a defamatory tape to Georgia).  Plaintiff, however, does not even make this argument in his Response.

[8] In his response to the motion to dismiss, Plaintiff asks for "limited discovery on the issue of personal jurisdiction . . . because the allegations are that the primary Defendant's act was willful, that it occurred in the State of Georgia and that the resulting injury occurred [t]here."  (Opp. to Mot. to Dismiss [28], at 7.)  There is no evidence to support Plaintiff's jurisdiction theory, and jurisdictional discovery is unnecessary because Plaintiff's claim fails on other grounds.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [23] is **GRANTED**.

**SO ORDERED** this 19th day of June, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE